IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

STACY MCGUFFIN                                                                                         PLAINTIFF

v.                                       Case No.  4:06-cv-4032

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                                                                        DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff Stacy McGuffin brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before the court were filed on February 13, 2004, alleging an inability to work since February 28, 2002, due to attention deficit disorder (ADD) borderline personality disorder, depression, and cyclothymia. (T.49, 90)[2]. An administrative hearing was held on August 10, 2005. (T. 212-233).  Plaintiff was present and represented by counsel.

By written decision dated October 28, 2005, the ALJ found that plaintiff was not under a disability defined by the Act. (T. 9-17).  Plaintiff appealed the decision of the ALJ to the Appeals Council.  Plaintiff's request for review of the hearing decision by the Appeals Council was denied on March 29, 2006. (T. 3-5). When the Appeals Council declined review, the ALJ's decision became

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] References to the Transcript of proceedings will be "(T. ___)."

the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1)[3]. This case is before the undersigned by consent of the parties. Both parties filed appeallate briefs and this case is now ready for decision. (Doc. # 9, 10).

**Evidence Presented:**

At the administrative hearing on October 28, 2005, Plaintiff testified she was thirty-seven years of age. (T. 215). Plaintiff testified she finished the 10th grade. (T. 215). Plaintiff tried to get a GED several times but failed to do so. (T. 215). The record reflects Plaintiff's past relevant work consisted of work as an assembler, poultry plant worker, cashier, maid, and waitress. (T. 229).

Plaintiff alleges she became unable to work on February 28, 2002. (T.90). This is also the date she last worked. She testified she stopped working because she was fired. (T. 90). Plaintiff also testified that she was fired because of lack of attendance and problems keeping her attention on what she was doing. (T. 219) She testified her work attendance problem was related to her doctors appointments. (T. 219). Plaintiff testified that it was during this time that she switched from Southwest Arkansas Counseling and Mental Health Center to Dr. Chester Jenkins and this required her to take off work all day to drive to Texarkana. (T. 219). The medical records show, however, that Plaintiff was first seen by Dr Jenkins on March 17, 2003, more than a year after she was fired. (T. 196).

Medical records show that on March 18, 1998, Plaintiff was admitted to the Arkansas State Hospital with a diagnosis of Cyclothymic Disorder, ADHD, and marijuana abuse. (T. 106). She was discharged on April 2, 1998, it was noted that she demonstrated no cognitive deficits and that she

---

[3]References to the Court's Docket will be by Docket Number "(Doc.# ___)."

2

was employable. (T. 106). The record shows Plaintiff had no earned income in 1998-2002. (T. 57-58).

On July 7,1998 Plaintiff was first seen at the Southwest Arkansas Counseling and Mental Health Center. She was diagnosed with borderline personality traits on Axis II, and late luteal phase dysphoric disorder on Axis I. She was having problems with irritability and wanting to "lose control," but she did not have rage episodes. She felt most of her symptoms were because of marital conflicts. (T 130).

She was seen again at the center on December 2, 1999, with a history of ADHD, depressive disorder, cyclothymia, ongoing martial conflict, anxiety disorder, impulsivity, reckless behavior, depressive disorder and some borderline personality traits. (T. 128).

On October 11, 2001, she was seen at the center. She indicated having a number of problems in her marriage. The record stated that she was showing improvement in depressive symptoms. (T. 127).

On February 14, 2002, she was again seen at the center. The record stated that she had a history of IV drug abuse, marijuana abuse, ADHD and martial problems. The Plaintiff indicated in the record that she had just lost her job after the snow storm and felt trapped in the relationship with her husband. (T. 126).

She was seen on July 16, 2002, with complaints of mood swings, irritability and racing thoughts. The doctor prescribed her Lithium. (T. 124).

According the medical record of Dr. Oladele Adebogun, dated January 7, 2003, she did minimize symptoms of mood swings but continued to exaggerate symptoms of inattention. (T 122).

Plaintiff was examined on January 14, 2003, and was well oriented, although she tended to be hyperactive and talkative. She was having no side effects from her medicine. (T. 121).

Plaintiff underwent a mental status exam on April 16, 2004. She stated that she was able to care for personal needs, drive a car, and cook meals. (T. 132). Her speech was clear and she was well oriented. (T 133). While her mood was mildly elevated, her thoughts were logical, relevant and coherent. (T. 133). She was assessed with a history of bipolar disorder, without psychotic features, and a mixed personality disorder. (T. 134). She indicated marital problems that worsened three years ago. (T. 132). She said she last worked in 2002 and was terminated because she missed work over "snow day" and could not have missed another day. (T. 133).

On August 13, 2004, Dr. Jay Rankin, a state agency physician, reviewed this claim. Dr. Rankin opined that plaintiff was mildly limited in her daily activities, and moderately limited in her ability to maintain concentration, persistence, pace, and social functioning (T. 146). Dr. Rankin found the Plaintiff was able "to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete." (T. 152). Dr. Rankin also found that the plaintiff was not markedly limited in any area of functioning. (T. 150-151).

Plaintiff was hospitalized from August 30, 2004, through September 3, 2004, complaining of sleeplessness, weight loss, agitation, irritability, difficulty concentrating, and feelings of loss of control (T. 173). She was treated with medication and became calmer and more affectively appropriate (T. 173). She tested positive for amphetamines and cannabinoids (T. 174).

On September, 15 2004, Plaintiff was referred by her representative to Dr. John Jameson, Ph.D., for a psychological examination. She indicated her problems as rapid mood swings and

obsession regarding her physical well being. (T. 188). She felt overwhelmed by the normal demands of life. (T. 188). Dr. Jameson's diagnostic impression was Bipolar I Disorder. (T. 188). Dr Jameson found several conditions the Plaintiff was suffering from, which if combined, would prevent the Plaintiff from working an eight (8) hour day on a regular basis. (T. 189-190).

From the later part of 2004 through early 2005, Plaintiff had several visits with Dr. Jenkins. The records indicate that the majority of her stress was related to marital problems. (T. 191-193).

**Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2007); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160

F.3d 1203, 1206 (8th Cir. 1998); *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.  *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation.  He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f) (2003).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

    <u>1. Plaintiff's Subjective Complaints:</u>

    The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

    After reviewing the record, I believe the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

    Plaintiff was hospitalized on March 18, 1998, for cyclothymic disorder and a history of ADHD. (T. 103). Upon release, Plaintiff was able to function independently and handle her finances. It was specifically observed that Plaintiff did not demonstrate cognitive deficits and that she was not unemployable. (T. 106).

Plaintiff was seen on October 11, 2001, by Dr. Segundo Ibara, for ADHD and dysthymia. (T. 127). On that date, Dr. Ibarra, stated that Plaintiff was experiencing marital problems but that she was having no other symptoms.

Dr. Ibarra noted on February 14, 2002, that Plaintiff had a history of IV drug abuse and marijuana abuse. (T. 126). Dr. Iberra further noted that Plaintiff was experiencing marital problems and problems with ADHD.

On July 16, 2002, Plaintiff complained of mood swings, irritability, and racing thoughts for the past several months. (T. 124). Plaintiff was prescribed Lithium, a mood stabilizer.

On January 7, 2003, Dr. Ibarra noted that Plaintiff had not been compliant with her medication, but that side effects had not been a problem. (T. 122). Dr. Ibarra observed that Plaintiff continued to exaggerate her symptoms. (T. 122). Plaintiff was examined on January 14, 2003, and was well oriented, although she tended to be hyperactive and talkative. It was also noted that Plaintiff was having no side effects from her medication. (T. 121).

Plaintiff underwent a mental status examination on April 16, 2004. Plaintiff reported that she was able to care for her personal needs, drive a car, and cook meals. (T. 132). Plaintiff's speech was clear, and she was well oriented. (T. 133). While Plaintiff's mood was mildly elevated, her thoughts were logical, relevant, and coherent. (T. 133). Plaintiff was assessed with a history of bipolar disorder, without psychotic features, and a mixed personality disorder. (T.134). Plaintiff's global assessment of functioning (GAF) was sixty (60), indicating a moderate impairment.

Plaintiff was hospitalized from August 30, 2004, through September 3, 2004, complaining of sleeplessness, weight loss, agitation, irritability, difficulty concentrating, and feelings of loss of

control. (T. 173). Plaintiff was treated with medication upon admission, and became calmer and more affectively appropriate. (T. 173). Toxicological examination showed positive test results for both amphetamines and cannabinoids. (T. 174). Upon discharge Plaintiff was coherent and directed to continue her medications and follow up with her therapist. (T. 174).

Plaintiff was referred by her representative for a psychological examination on September 15, 2004, with John Jameson, Ph.D. (T. 188). Dr. Jameson noted Plaintiff appeared well oriented, without apparent deficits in cognition, although she was easily distracted and exhibited difficulty concentrating. (T. 188).

A review of the medical records show Plaintiff was cognitively intact, and she remained capable of functioning in her daily activities as well as caring for her son. On a form completed January 18, 2004, Plaintiff stated she was able to care for herself, perform housework and yard work, grocery shop, and cook on a daily basis. (T. 74-75). Plaintiff further stated she attends church, watches television, listens to the radio, reads, and that she gardens. (T. 75-77). These activities are inconsistent with a claim of total disability, and are supportive of the ALJ's finding that Plaintiff was capable of at least some work activity. *See Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002).

There is also inconsistency is the circumstances of Plaintiff's claim being unable to work. She alleges she became unable to work on February 28, 2002. (T. 90). At the hearing, she testified that she was fired due to her poor attendance and because she had problems keeping her attention on what she was doing. (T. 219). She testified that the poor attendance was related to taking time off for doctor appointments due to the fact that she switched doctors. Her new doctor was located in Texarkana, requiring her to take a day off from work to see him. (T. 219). However, the records

show Plaintiff change doctors over a year after her firing. (T. 196). On two other occasion, the records indicate that she lost her job due to the fact of a snow storm which caused her to miss work when in fact she could not miss anymore days of work. (T. 126 and 133).

Plaintiff argues that side effects from her multiple medications would make it impossible to perform work. *See* Pl.'s Br., at 20. However, the medical evidence shows that Plaintiff was not experiencing side effects from her medication. Plaintiff was examined on January 14, 2003, and reported that she was not having side effects from her medication. (T. 121). On January 7, 2003, Dr. Ibarra again noted that side effects had not been a problem. (T. 122). The record is not supportive of Plaintiff's argument that side effects from her medication would prohibit her from working.

Plaintiff argues that she has met a Listing for mental disorders in that she has marked limitations in the domains of daily activities, social functioning, concentration persistence and pace, and repeated episodes of decompensation. (T. 13-19). The ALJ found that Plaintiff was not limited in her daily activities, mildly limited in her social functioning, moderately limited in concentration and had no episodes of decompensation. (T. 14). These findings are supported by the record.

Dr. Jay Rankin, a state agency physician, reviewed this claim on August 13, 2004. Dr. Rankin opined that Plaintiff was mildly limited in her daily activities, and moderately limited in her ability to maintain concentration, persistence, pace, and social functioning. (T. 146). Dr. Rankin found no episodes of decompensation. (T. 146). Dr. Rankin found Plaintiff was not markedly limited in any area of functioning. (T. 150-151). While not conclusive, the opinions of reviewing physicians are properly considered if the ALJ conducts an independent analysis of medical evidence. *See Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995).

Plaintiff reported that a wide range of daily activities including house and yard work, cooking, shopping, and caring for herself and her son. (T. 74-75). Plaintiff also reported gardening, reading, and watching television. The ALJ's finding that Plaintiff was not limited in her daily functioning is consistent with the activities reported by Plaintiff.

The record also supports the ALJ's finding that Plaintiff was mildly limited in her social functioning. Plaintiff reported going to church, and the record shows that Plaintiff was able to work around others in the past and that she lost her last job due to her poor attendance rather than an inability to get along with others. Further, a review of the treatment notes fails to show that Plaintiff reported difficulties with social functioning, except for the fact that she was having marital problems.

The Plaintiff does have some difficulties in concentration, and the ALJ properly found her moderately limited in this regard. On September 15, 2004, Dr. Jameson noted that Plaintiff appeared well oriented, without apparent deficits in cognition, although she was easily distracted and exhibited difficulty concentrating. (T.188). Plaintiff underwent a mental status examination on April 16, 2004. While Plaintiff's mood was mildly elevated, her thoughts were logical, relevant, and coherent. (T. 133). Plaintiff's global assessment of functioning (GAF) was sixty (60), indicating a moderate impairment. This is consistent with the findings of the ALJ that Plaintiff had moderate limitations in this area.

Regarding episodes of decompensation, the record does not support Plaintiff's assertion of repeated episodes in this domain. While the record shows that Plaintiff complains of symptomology and occasional difficulties with her functioning, this does not equate to repeated episodes of decompensation. The main medical record relied on by Plaintiff for this domain was a

hospitalization in 1998, four years prior to her alleged onset date. Upon discharge from that hospitalization, it was specifically noted that Plaintiff was not unemployable as a result of her condition. (T. 106). The other medical records relied upon by plaintiff include two (2) records from April 2004, (T.134 and 197), and one from September 2004. (T. 177). The record in this case supports that determination of the ALJ that Plaintiff was not having repeated episodes of decompensation as a result of her illness.

The record does not support Plaintiff's assertion that Plaintiff has a Listing level impairment. The ALJ properly considered not only Plaintiff's testimony, but also the medical evidence and the opinions of various examining and treating physicians in reaching his conclusions.

2. Plaintiff's RFC Assessment:

It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The Residual Functional Capacity ("RFC") is the most a person can do despite that person's limitations. *See* 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be

supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Here, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating physicians, and the evaluations of non-examining physicians in determining the RFC assessment.

Plaintiff argues the ALJ erred in not giving controlling weight to the RFC assessments completed by treating physicians. While an ALJ's failure to consider or discuss a treating physician's opinion that a claimant is disabled is error when the record contains no contradictory medical opinion, *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998), an ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). A treating physician's opinion is due "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id*. at 1012-13 (quoting 20 C.F.R. § 404.1527(d)(2) 2000). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

In his decision, the ALJ expressly considered the opinion offered by psychologist John Jameson in which Dr. Jameson stated Plaintiff was unable to meet competitive standards in nearly every area of work related functioning. The ALJ found that this opinion was unsupported by the record. A treating source's opinion is generally entitled to substantial weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). An ALJ may reject the opinion of any medical expert

13

where it is inconsistent with the medical record as a whole. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). When supported by substantial evidence, the ALJ's findings are conclusive and must be affirmed. *See Richardson v. Perales*, 402 U.S. 389 (1971).

In his decision the ALJ found the Plaintiff was capable of performing work activity where interpersonal contact is incidental to the work performed; complexity of tasks is learned by rote with few variables and requiring little judgment; and direct, simple and concrete supervision. (T. 28). Relying on vocational expert testimony, the ALJ properly found that Plaintiff was capable of performing her past relevant work.

The ALJ also considered testimony of Elizabeth Clem, a vocational expert (VE). The VE testified that Plaintiff's past relevant work included unskilled assembly work, unskilled cashier work, and semiskilled work as a waitress. (T. 229). The ALJ asked a hypothetical to the VE regarding a person who was limited to the performance of work where interpersonal contact is incidental to the work performed; complexity of tasks is learned by rote with few variables and requiring little judgment; and direct, simple and concrete supervision. (T. 230). In response, the VE stated that Plaintiff could perform her past work with the exception of waitress. (T. 230).

I find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. (T. 229-230)). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, I find that theVE's answers to the interrogatories constitute substantial evidence supporting the ALJ's conclusion the Plaintiff could perform her past relevant

work, but for the waitress job. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

After a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ. Accordingly, the Commissioner's decision should be affirmed, and the Plaintiff's complaint dismissed with prejudice. A Judgment incorporating these findings will be entered pursuant to F.R.C.P. 52 and 58.

**ENTERED** this **11th day of April, 2007.**

/s/   Barry A. Bryant  
HON. BARRY A. BRYANT  
U.S. MAGISTRATE JUDGE